### 7189

### BREEDEN v. MOORE.

WILLS—LIMITATION OF ESTATES—REMAINDERS—STATUTE OF USES.—In a devise in trust for and during the natural life of T., he not to account for rents and profits, and after his death to convey to his children then living, but in case he should die leaving no lawful heirs, then to *permit* L. to occupy the land during her natural life and after her death to convey to the heirs of her body; but if she die without leaving such heirs, then to divide the land among the surviving children of testator, the limitation over after death of L. is not too remote, and the grantee of L. cannot hold adversely to remaindermen under deed from L. simply conveying her interest under acts of possession similar to those of L. until after falling in of her life estate.
*Bristow* v. *McCall,* 16 S. C., 545, *criticised.*
*Benbow* v. *Levi,* 50 S. C., 120, and *Young* v. *McNeill,* 78 S. C., 143, *distinguished from this.*

Before DANTZLER, J., Marlboro, November term, 1907. Reversed.

Action by Lucy Breeden, Jane Newton and others against Alice G. Moore and others. From Circuit decree, plaintiffs appeal.

*Messrs. Livingston* and *Muller* and *Newton* and *Owens* for appellant. *Messrs. Livingston* and *Muller,* cite: *Limitation over after life estate of Mrs. Goodwin is not too remote:* 46 S. C., 265; 1 Bail. Eq., 48; 1 Hill Ch., 265; 3 Rich. Eq., 384; 11 Rich., 489; 13 S. C., 118; Bail. Eq., 40, 42; Dud. Eq., 71; 1 Rich. Eq., 78, 399, 407; 16 S. C., 262; 52 S. C., 261. *Mrs. Goodwin only takes a life estate:* 1 Bay, 452; 1 Rich. Eq., 141; 1 Strob. Eq., 346; 3 Rich. Eq., 576; 16 S. C., 297. *Heirs of Mrs. Goodwin take as purchasers:* Bail. Eq., 351, 536; Bail. L., 455; 3 Rich. Eq., 541; 5 Rich. L., 605; 6 Rich. Eq., 26; 23 S. C., 46, 236. *Or she takes only a fee conditional:* 1 McC. Ch., 83; 3 Hill, 194; Strob. Eq., 190; 2 Rich. Eq., 52; 13 Cyc., 651; 5 Rich. Eq., 449; 77 S. C., 231. *Statute of Limitations:* 25 Cyc., 1066; 3 Wash. on Real Prop., 159; 1 Cyc., 1058; 3 Strob. Eq., 378; 10 Rich. Eq., 226; 6 Rich., 132; 17 S. C., 228; 18 S. C., 53; 22 S. C., 323; 25 S. C., 524; 54 S. C., 395; 59 S. C., 507; 76 S. C., 432.

*Messrs. J. H. Hudson, McCall & McCall* and *Townsend* and *Rogers,* contra.

*Mr. Hudson* cites: *Statute ran against trustee:* 78 S. C., 143; 50 S. C., 127; 15 S. C., 595; 4 Rich. Eq., 60.

*Messrs. Townsend & Rogers* cite: *Construction of wills:* 67 S. C., 133; 76 S. C., 489. *Executed trust:* 18 S. C., 189; 29 S. C., 138; 23 S. C., 291; 31 S. C., 13; 16 S. C., 549. *Rule in Shelley's case does not apply to executory trusts:* 61 S. C., 250; 36 S. C., 354; 42 S. C., 346; 2 Rich. Eq., 53. *Mrs. Goodwin took a fee simple estate:* Bail. Eq., 48; 46 S. C., 267; 16 S. C., 312. *Statute runs against trustees:* 4 Rich. Eq., 60; 50 S. C., 127; 54 S. C., 399; 78 S. C., 143; 16 S. C., 424.

May 10, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Thomas Stubbs, Sr., of Marlboro county, died on the 18th June, 1847, leaving a will, by the fifth clause of which he made this devise: "I give and devise to my friend Holden W. Liles, one hundred acres of land whereon my son, Thomas Stubbs, Jr., now lives, composed partly of the Bowyer tract and partly of the Terrell tract, *in trust nevertheless,* to permit my said son, Thomas Stubbs, Jr., to use and enjoy the same to his sole and separate use, without rendering an account of the rents and profits, during the term of his natural life, and after his death to convey the same to the children of the said Thomas Stubbs, Jr., lawfully begotten that may be living at the time of his death, to them and their heirs forever, and should he die leaving no heirs lawfully begotten, surviving him, I give the said tract of land to the said Holden W. Liles *in trust* to permit my daughter Lucy Ann Goodwin to use, occupy and enjoy the same during her natural life and after her death to convey the same to the heirs of her body, to them and their heirs forever, should she die leaving no such heirs then the said trustee to divide the same equally among my surviving children, the issue of any deceased child, taking the share of any of my children who may then be dead." Thomas Stubbs, Jr., held possession of the land as devisee until 1856, when he died without having had issue of his body. Immediately after his death, Lucy Ann Goodwin went into possession and held until 1881, when she made a deed of conveyance to Milton A. J. Moore and his wife, Alice Moore. This deed purported to convey nothing more than the interest of the grantor, the words used being, "all my interest and estate in and to" the premises described, and it contained no warranty clause. Mrs. Goodwin, the life tenant, died in June, 1898, without ever having any issue of her body. Soon after her death the plaintiffs, claiming as heirs of children of Thomas Stubbs, Sr., who survived him, brought this action, alleging that the life estate having fallen in they were entitled, as remaindermen, to a partition

of the land.  M. A. J. Moore and his wife, Alice Moore, having been made parties to the suit, by their answer set up these defenses: *First,* that the deed from Lucy Ann Goodwin conveyed to them a good fee simple estate; and *second,* that they had held the land adversely to the plaintiffs and all other persons since their entry under the deed in 1881; and *third,* that they had acquired by deeds of conveyance whatever interest in the land existed in favor of certain of the persons named in the complaint, as holding an interest in common with the plaintiffs and by the same right.  During the pendency of the action, M. A. J. Moore died, and his executors and executrix, and his devisees and legatees were substituted for him as defendants.

From the date of the deed in 1881, M. A. J. Moore and his wife and his devisees have been in possession of the land. The original trustee, Holden J. Liles, died about the year 1881, and his eldest son, James E. Liles, became his successor by operation of law: *Reynolds* v. *Reynolds,* 61 S. C., 250, 39 S. E., 391; *Cone* v. *Cone,* 61 S. C., 522, 39 S. E., 784; and, as trusteee, was made a party to the suit.  He testified, however, that he never heard of the trust until this action was commenced, and of course, had nothing to do with the land.

The Circuit Judge held the limitation over after the death of Lucy Ann Goodwin to be too remote, and that she, therefore, took a fee simple title which passed by her conveyance to M. A. J. Moore and Alice Moore.  This conclusion would be correct but for the fact that the limitation over is to the testator's "surviving children."  Such a limitation was held not too remote in *Selman* v. *Robertson,* 46 S. C., 262, 24 S. E. 187; where the subject is fully discussed and the authorities cited.

The Circuit Court held further, that the grantees of Mrs. Goodwin had acquired title by adverse possession.  We think this conclusion also was erroneous, for two reasons, *first,* the grantees of Mrs. Goodwin could not hold adversely

against the remaindermen or the trustee for them, until the
termination of the life estate of Mrs. Goodwin; and,
*second,* there was not a *scintilla* of evidence of adverse pos-
session. To support the plea of adverse possession, it is
necessary to show that the claimant against whom it is
asserted was not prevented by law from asserting his right
during the period of the possession, alleged to be adverse.
In the effort to meet this requirement, the respondents
maintain that assuming the remainder over to be valid, yet
the legal title was in the trustee during the life of Mrs.
Goodwin, that she had no right to convey and that when
they took a deed from her and entered under it, their adverse
possession began. The question then is, whether, the trustee
or Mrs. Goodwin held the legal title to the life estate, for
it will not be doubted if Mrs. Goodwin held the legal estate
for life, no act of hers could defeat the remaindermen, and
no possession during her life could be adverse to the trustee
or remaindermen. In *Howard* v. *Henderson,* 18 S. C., 184,
192, the conveyance was to a trustee "for the use, benefit,
and behoof of the said William S. Howard, Sr., during
the term of his natural life, with remainder at his death to
the said Georgia V. Howard, during the term of her natural
life, and upon her death to such child or children of the
said William S. Howard, Jr., and the said Georgia V.
Howard, as may be living." It was held that the statute
executed the use as to the life estate, the Court saying: "So
that whatever may be the proper construction of this deed
in reference to the application of the statute of uses on the
estates of Mrs. Howard and the children in remainder, there
is no reason why it should not execute the estate of W. S.
Howard, Sr., the plaintiff, vesting in him a legal estate for
life, the fee possibly remaining in the trustee for the benefit
of the married woman, and for the preservation of the
contingent remainders to the children." The same principle
was applied conversely in *Williman* v. *Holmes,* 4 Rich. Eq.,
475 and *Wieters* v. *Timmons,* 25 S. C., 488. 1 S. E., 1. In

these cases it was held the trustee retained the legal title as to the life estate, while as to the remainder the statute executed the use, and vested the legal title in the remaindermen freed from the trust. These adjudications rest on the rule of universal application that a trustee will not be held to take any larger estate than is necessary to enable him to perform the duty imposed by the instrument creating the trust. This principle and the authority of the cases above cited are recognized and restated in *Ayer* v. *Ritter,* 29 S. C., 137, 7 S. E., 53; *Young* v. *McNeill,* 78 S. C., 150, 59 S. E., 986, and *Moseley* v. *Hankinson,* 25 S. C., 519.

There is difficulty, it is true, in reconciling the case of *Bristow* v. *McCall,* 16 S. C., 345, which preceded *Howard* v. *Henderson, supra,* with the principle just stated. There the trustees were required to make division of the land between D. and E. "and permit each to use, possess, and enjoy his or her half in severalty during his or her natural life, and after the death of either to divide the share of each among his or her children equally." The trustees divided the lands between D. and E., but it was held that the legal title to the life estates, as well as the remainders, remained in the trustees, because the duty devolved on them to make division among the remaindermen after the termination of the life estate of D. and E. We can perceive no difference between *Bristow* v. *McCall* and *Howard* v. *Henderson,* except that in the latter case the statute executed the use automatically, immediately upon the execution of the deed; while in the former, the trustee completely performed the duties devolving upon him under the will with respect to the life interests; and this difference seems to be too unsubstantial for judicial recogntion. While the case of *Bristow* v. *McCall* has been often cited, its doctrine on this point has never been restated nor recognized. On the other hand, the rule followed in *Howard* v. *Henderson* is, as we have pointed out, but an application of the principle before laid down in *Williman* v. *Holmes, supra,* and reaffirmed in the later cases

cited. This principle is too well supported by reason and authority to be rejected, and the case of *Bristow* v. *McCall* must be overruled, so far as it is inconsistent with it. If it is followed, clearly Mrs. Goodwin held the life estate freed from the trustee, and no one holding under her could set up adverse possession against the trustee or the remaindermen for whom he held, for the obvious reason that Mrs. Goodwin had a right to convey the land for her life, and neither the trustee nor the remaindermen could have any right of action for the possession until the death of Mrs. Goodwin. *Moseley* v. *Hankinson,* 25 S. C., 519; *Rawls* v. *Johns,* 54 S. C., 395, 32 S. E., 451; *Rice* v. *Bamberg,* 59 S. C., 507, 38 S. E., 209; *Mitchell* v. *Cleveland,* 76 S. C., 432, 57 S. E., 33.

The fact that in this case the trustee was to *permit* Mrs. Goodwin "to use, occupy and enjoy" the land did not indicate that any duty was to be performed by the trustee, and did not take the case out of the statute of uses. *McNish* v. *Guerard,* 4 Strob. Eq., 74; *Holmes* v. *Pickett,* 51 S. C., 280, 29 S. E., 82.

But even if it be assumed the trustee retained the legal title of the life estate of Mrs. Goodwin, the result would be the same. In *Benbow* v. *Levi,* 50 S. C., 120, 27 S. E., 655, it was held in accordance with a rule of general acceptation, that if the legal title is in the trustee, the *cestui que trust* may be defeated by possession adverse to the trustee; but that case went no farther than to hold that a *cestui que trust* would be barred by such adverse possession when *her right to possession might have been asserted by the trustee, during the period of the adverse holding.*

Even if the case of *Young* v. *McNeill,* 78 S. C., 143, 59 S. E., 986, be considered to extend the principle of *Benbow* v. *Levi* to the rule that a *cestui que trust* in remainder will be barred by an adverse holding against the trustee during the time that he might have asserted the life tenant's right of possession and before the accrual of the right of the re-

maindermen to possession, still this case does not fall within the rule; for the reason that there was no evidence whatever of adverse possession against the trustee or the remaindermen.

Mrs. Goodwin had the right "to use, occupy and enjoy" the land during her life. This right, whether legal or equitable, she could convey or assign to another, and the trustee had no right to interfere. Far from asserting an adverse right, Mrs. Goodwin undertook to convey only her interest and estate. Under this conveyance or assignment, her grantees or assignees had the right "to use, occupy and enjoy" the land during Mrs. Goodwin's life without interference from the trustee. There is not a particle of evidence that they did anything to bring home to the trustees notice that they claimed to hold the land by any higher claim than Mrs. Goodwin could and did confer. The lands were agricultural, and the evidence shows that they were cultivated and rented out just as the other lands of the grantees were, and just as any one having the right "to use, occupy and enjoy" would have cultivated or rented them. Not a single fact or condition appears in the testimony, inconsistent with the occupation and use which the life tenant and those claiming under her were entitled to have for the life of Mrs. Goodwin; with which use and occupation neither the trustee nor the remaindermen could interfere. On the contrary, the possession was entirely consistent with the claim of the remaindermen or of the trustee for them.

The Circuit decree is without support in the evidence and must be reversed, and it is adjudged the lands be partitioned in accordance with the rights of the parties.

MR. CHIEF JUSTICE JONES and MR. JUSTICE GARY *concur on the ground that the remainder over was good, that the statute executed the use in Mrs. Goodwin, and therefore, adverse possession of her grantees could not commence until her death.*